Case 18-1492, Timothy Jodway et al. v. Orlans PC et al., argument not to exceed 15 minutes per side, Ms. Zanke Jodway, you may proceed for the appellant. Thank you, good morning your honors, and may it please the court, I would request two minutes for a rebuttal. Very well. What I'm seeking today is reversal of dismissal of my Fair Debt Collection Practices Act claim against Orlans and two of their attorneys. Specifically, the collection action involves a mortgage transaction wherein every mortgage transaction is subject to the Equal Credit Opportunity Act. Their client had violated the Equal Credit Opportunity Act in three ways. One, in not giving us notice of the action taken on two different applications. One was a joint application signed by myself and my husband that got us to closing, and it was based on the loan officer's requirement that joint income was needed. The other at closing was presented with an application that only had my husband's income. I told the loan officer, if Tim can be approved, I'm not on it. I refused to sign that loan application, was never given a copy of it, and was never given an action taken notice by Fifth Third. I had previously sued them in 2008 based on an inflated appraisal seeking rescission based on fraud. At that time, the attorney was Mark Vanderlaan. He had filed a declaration for the loan officer claiming where it appeared that... So you were saying they inflated the appraisal? Yes. So you're saying you shouldn't have gotten the loan that you got? Yes, for the amount that we got it. Yes. So they should have saved you from yourself? Is that... No, I'm just giving that as a means of background that I sought rescission because it was an inflated amount. But at that time, what's significant about that case is that the loan officer filed a declaration that appeared that the loan was actually granted on the joint application. But what Fifth Third did is disclosed under the Home Mortgage Disclosure Act, they disclosed to the Federal Reserve Board that the loan was granted on the closing date and only contained my husband's income. That's the loan application that I did not sign. But it was... It's confusing, I know. Counsel, you're addressing the merits here. There's this question of whether your claims are barred by the statute of limitations. If they are barred, I suppose we don't get to the merits. What's your argument regarding the statute of limitations? My argument regarding the statute of limitations is that the action was filed timely. The foreclosure judgment on 4-15-16 was served on 4-18-16. I filed my complaint on 4-19-2017. And there was a preliminary determination that I owed the $945,000 on the account despite not being an applicant signatory. That in and of itself, obviously a violation. But the violation goes further after that time. Because my husband... Which violation are you referring to? The Fair Debt Collection Act violations. Because I filed under 1692E, misrepresentations in connection with the debt. And 1692F, unfair, unconscionable practices in the collection of the debt. And payments had been collected through my husband's Chapter 13 proceeding. Because Orleans attempted to... Okay, but what's the earliest date that you say you were appraised of the claims that are subject to this lawsuit? The payments were collected based on the misrepresentations that this mortgage loan was basically infallible. Which it was not because it's subject to the ECOA. Now you're talking about your argument that there's a continuing violation. Is that where you're getting to now? What I was asking you is the first date upon which you knew that this problem existed, this dispute. The dispute regarding the ECOA is when I received the loan application that did not have my signature. And it got me thinking about it. Because I had not seen it in over 11 years. What date are you referring to? That would be a few days prior to the hearing for the entry of the judgment. But what was done before that is that payments were being made on the misrepresentation that the judgment was infallible. But didn't you have that application? No. You had your own copy, didn't you? No, no, not that one. What did we find in the earlier case when this court affirmed the bankruptcy court rate? Didn't we say that you had that application that was yours? That I saw it. But where I should have carried on my argument is the confusion is what application did Fifth Third grant the loan on? And under the ECOA, they have never given us the action taken notification, which is very similar to what happened in the Jones case, where this circuit equitably told a one-year Truth in Lending Act claim because the Jones were not given a copy of their loan documents. All of a sudden, their interest rate goes sky high. And this court found that the one-year statute of limitations would be told because the required disclosure was not made. And what they looked at in that case is that the disclosure was not made as to when the trigger is. The disclosure was not made. What disclosure are you talking about? The mortgage was recorded, so it wasn't concealed. So your basis for equitable tolling is what sort of concealment? The concealment on which application on which the loan was granted because under the ECOA. I'm not following you. What about the application was a problem? When you apply for a loan, the creditor has to give you within 30 days a notice of what action they have taken. And in this circuit, the Tyson case is a good example of that. The lady went in to buy the car. She did not get an action taken letter. And the dealer who arranged for the credit had to basically tell her to come back in. We have to make different arrangements because your credit wasn't accepted. She did not get an action taken letter. Okay, that's that case. But what happened in your case? I did not get an action taken letter on which loan application the loan was granted. Because they're either going to grant or deny them. And if they deny them, it's an adverse action. You got the loan, right? Correct. You're just saying that they didn't send the letter on the correct application, the one that you didn't sign, right? Correct. Okay. And they concealed that. But you knew that you hadn't signed it a long time ago, right? As soon as they tried to foreclose and named you, weren't you on notice that there was something in your mind that was awry because you hadn't signed it? No. And I think back. Eleven years ago, do you remember what you signed? And I'm doing this as a mental exercise. It's very difficult to remember. A $100,000 loan application? Maybe, I would think. Well, I would have to refresh my recollection of how the closing went. Because Tim appeared first, and then I appeared. And my signatures were obtained before that final, and they marked it, final loan application was presented to me by the closer. And that is when I refused to sign it. I said, this isn't right. I'm coming to this closing on something else. But getting to where this violates the Fair Debt Collection Practices Act, they were moving for foreclosure. Under, and this is under the Masudo and other cases, when there is an ECOA, Maryland Status Discrimination Recruitment Defense. I'm obviously not going to get any damages because the statute of limitations, it was three years at the time that this occurred. But I can get a recruitment defense, and that is what the Michigan Court of Appeals has recognized. To dwindle down that note. So, to the point of zero, so where I will not have any liability. When that is concealed, that is an unfair, deceptive act that the defendant engaged in. For every mortgage, every credit transaction, every mortgage transaction is subject to the ECOA. And when they filed a 12B6 motion to dismiss on statute of limitations grounds, I cited the case of McKellack, which states that under Rule 8, and it refers to Lutz, under Rule 8, I have no obligation to plead compliance with the statute of limitations. But this was known. We had payments that were being collected from May of 2015 to August of 2016. They knew I had to file a stay bond to stop collection of the foreclosure judgment. And that was $18,000. So these are injuries, concrete injuries, which Judge White looked at, and most recently in the May case in July of 2018, the Article 3 concrete injuries for standing to bring an FDCPA claim. You're talking about, you're saying you were making payments on, is that your argument on the statute of limitations, is the payments that were made within a year? Yes. But haven't we rejected that argument in the Samson cases, that the continuing payments are not, the act is when you were first on notice of foreclosure, not that you were paying on a supposedly invalid mortgage? That relates to the bankruptcy and the representations that the loan itself had no defenses to it, which concealed the fact that it did, because there was no investigations by the Orleans defendant to put an application to a loan. As you know, Judge Clay, under the ECOA, I believe that you authored the RLBV acquisition case, that when a spouse is made to be an additional party, despite the fact that the other spouse is credit worthy, there is discrimination violations, and there can be a recoupment defense. Does the panel have any questions for me at this time? Judge Keith, do you have anything? I don't know. Apparently not. Okay. I've got four seconds here, and I would say that the sanctions are unwarranted and not in line with the Penn case. Thank you. Thank you very much. We'll hear from your opposing counsel. Okay. Good morning. Good morning, Your Honors. May it please the Court, my name is Regina Slowy. I'm appearing on behalf of defendant appellees Orleans P.C., Elizabeth Wood Carroll, and Christine Richter. To begin as an overview, the current complaint is the latest in a long string of legal proceedings in which the appellants have repeatedly and unsuccessfully challenged the validity of a mortgage, despite repeated rulings against them. The underlying mortgagee now has a judgment of foreclosure on a property, which has secured a debt now approaching a million dollars. The complaint is meritless and is abuse of the legal system, an attempt to harass and intimidate fellow counsel from advocating for their client in the related state court litigation. The federal district court complaint was properly dismissed by the trial court, and the sanctions were properly imposed. I really only have three points to make. I may not even use my time. But the first is that the trial court was absolutely correct. On its face, the claims are time barred. No discovery is even needed for this because of the extraordinary amount of litigation caused by the appellants. Everything is substantiated by public court filings. The bankruptcy proof of claim filed by Elizabeth Wood Carroll was on September 16, 2014. The judicial foreclosure complaint was filed by Christine Richter on July 15, 2015. The discovery issue, the infamous loan application number three, at the latest, was filed in February 2016 in a brief. It's referenced in appellant's March 10, 2016 brief and was argued on April 15, 2016. The complaint filed in the Eastern District of Michigan by the appellant was filed on April 19, 2017, more than a year past any of those allegations. The loan application three, that's the one that she didn't sign. Well, actually, you're right. She did sign it. She just didn't sign it on page three. Oh, okay. I'm sorry. She signed at the bottom of the end of it, right? But not the part about the specific box that said you're liable or whatever it is? Well, both actually have co-borrower under the line. Oh, okay. Okay.  At the latest. As we know, discovery documents, whether or not just accepting that as a discovery document, aren't provided to the courts. But didn't this court say they had it or they should have had it? Oh, absolutely, Your Honor. In that brief. This court, I like that opinion very much. This court stated that because he signed it, he knew what was going on. You can't take firsthand knowledge and say that it was concealed from you. The district court was also correct in ruling that the continuing violation theory does not apply to an FDCPA claim. The Sixth Circuit stated in Slorp in 2014 that when a debt collector initiates a deceptive, abusive, or otherwise unfair lawsuit, there is no doubt that the FDCPA claim, insofar as it is viable, accrues on that date. Although the subsequent prosecution of the suit may increase the damages, the continued accrual of damages does not diminish the fact that the initiation of the suit was a discreet and immediately actionable event. This was confirmed two years later in 2016 by this court in Smith v. LSR. And the court not only cited to and confirmed the reasoning in Slorp, but it also addressed the issue of fraudulent concealment, stating, one, that the court has repeatedly declined to rule on whether fraudulent concealment can even apply to an FDCPA claim. But two, to do so, if it were, the party must plead facts that show active concealment and that the party was prevented from knowing because of that concealment. In Guy v. Mercantile Bank in October 2017 opinion, this court goes even further and states that the fraud alleged much showed that it lulled the party into not filing their claim sooner. That's not alleged, nor is it viable. My second point is that the trial court could have ruled on the allegations themselves as well. As to Elizabeth Abood Carroll, the allegations against Orleans and Elizabeth center on the filing of a proof of claim in Mr. Jodway's Chapter 13 bankruptcy. Any scintilla of such a claim has been blown away by the Supreme Court of the United States opinion in Midland Funding LLC v. Johnson in May 2017. The Sixth Circuit had already leaned towards this conclusion, but the Supreme Court made it clear. No FDCPA violation in the context of a Chapter 13 bankruptcy. First, a claim cannot be deemed as false, misleading, or deceptive just because an affirmative defense may reduce or nullify payment. The bottom line is that a bankruptcy trustee may properly deny a bad claim and because of that, filing the claim is not false or deceptive. And in this case, as you know, the trustee did not disallow the claim. Second, the Supreme Court distinguished civil actions from Chapter 13 bankruptcy proceedings. Bankruptcy proceedings are commenced by the consumer and overseen by a knowledgeable trustee. These features stated by the Supreme Court make it considerably more likely that an effort to collect upon a bad claim in bankruptcy will be met with resistance, objection, and disallowance. What do you say about the Jones case and equitable tolling?  What I would stand by is that at the latest, all documents were handed to the appellant by February 2016. She had them in her hands, provided even if she didn't have them, as provided by the bank in 2005. And the last thing about Midland is that the Supreme Court stated that allowing an FDCPA claim in the context of bankruptcy proceeding would authorize a new significant bankruptcy-related remedy that is not provided in the Bankruptcy Code. That's exactly what's trying to happen here. Thus, there should be no claim allowed for any allegations centered on the bankruptcy proceedings. As to Christine Richter, the complaint asserts it was an FDCPA violation to fail to produce the Loan Application No. 3 in discovery and then produce it days prior to the hearing. First, that's inaccurate, as shown by the record. Though the documents aren't part of the court record, the exhibits to filings are. And Loan Application No. 3 was at the very least attached as Exhibit 1 to a brief filed by Ms. Richter in February 2016. Second, it cannot be concealed, as it had been signed by both Timothy and Elena Jodway. Although not signed on all pages by both, both did indeed sign it. The state court addressed this issue, noting that the document was signed and that both the Jodways admit to having reviewed and signed the loan applications. Thus, there was no concealment. And again, as you've said, this court also noted that. This court said that you cannot claim there's an attempt to use wrongful concealment as a basis to escape race judicata because it was in a slightly different context. Because it was signed and the contents were thus known to him through firsthand experience. Third, this is at most a discovery violation, not an FDCPA violation, which could and should be reviewed and addressed within the confines of the specific case. It was in fact raised in the state court case, and the state court of appeals confirmed there was no discovery violation, let alone sinister concealment. And fourth, and this just goes to the basic standard of 12b-6 motions, per Twombly and Progeny, which was adopted by the Sixth Circuit clearly in the Association of Cleveland Firefighters, factual allegations must rise to a right of relief above the speculative level. The complaint must state a claim of relief plausible on its face, and factual allegations are accepted as true, but the plaintiff's legal conclusions are not. Pursuant to the Supreme Court in Iqbal, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. And it is the plaintiff's legal conclusions that form the basis of this claim, that the attorney is imputed to know everything a client knows, which is ridiculous, frankly, but regardless, that is a legal conclusion, and it does not survive a Twombly or Iqbal analysis. Thus, on the claims themselves, the dismissal of the complaint against all defendant appellees should be affirmed. My last point is that sanctions in this case were proper. When we first received notice of this complaint, it landed on my desk, and I frankly couldn't believe it. The very first thing I did was send the Rule 11 sanctions letter. But you didn't attach the... The motion. I did not attach the motion, Your Honor. The rule is pretty clear, right? Well, the rule is clear, but we did in fact file the motion, and the appellant... But not 21 days as required by the rule. Well, it was within, correct, but the appellant filed a response to the motion. And the appellant never argued that you hadn't served the paper, right? Correct. Exactly. I assume that rule is not jurisdictional, right? It's waivable? Yes, absolutely. And this falls under the abuse of discretion review. How much time passed between when you sent the letter and when the judge ruled on the dismissal? Oh, that's a very good question. I sent the letter in approximately May of 2000. The judge ruled 7 1⁄2 months after I filed the motion, which was in July. So they had ample time to withdraw the claims that you identified in your letter. Absolutely. That is actually one of the things that is important. I filed the motion on July 24th. They filed a response on August 8th. The judge didn't rule until the following March. Even with all that being said, how do you get around this Penn LLC versus Prosper Business Development Corporation case that seems to require the rule of safe harbor provisions pretty much be followed in a mandatory kind of way? Well, I would say to that, Your Honor, that, again, this wasn't raised at the district court level. It was waived at the first time of appeal, and so it should be waived at that point. Secondly, there was plenty of time to respond. Thirdly, they didn't ever state that they would have dismissed the claims if they had seen a copy of the motion, as opposed to a copy of the letter clearly spilling out what it was that we intended to do. And, in fact, I think it's clear that they would not have dismissed the claims, seeing as how we're here still arguing the merits of the underlying case instead of whether or not there was an actual FDCPA violation. All right. Anything further? No. In conclusion, we just simply request that the trial court be affirmed in the dismissal of the complaint and in the imposition of sanctions. Do you have any questions, Judge Keith? Nothing at all. All right. Thank you very much. I will now rebuttal. Thank you. Counsel, with regard to the motion for sanctions, you wouldn't, even though the safe harbor provisions of the rule were not complied with, you still don't concede that your conduct was sanctionable, which is to say you would not have relinquished your position even if you had received the motion 21 days prior as required by the rule. Is that right? That is correct, Your Honor. And the letter was basically a one-sentence letter saying dismiss your complaint without any foundation or basis whatsoever. I think that counsel misconstrued the Midland case. That case involved a debt buyer that filed a proof of claim in bankruptcy that had information on it that the statute of limitations was up, and that's how it got to slide through that process because there was nothing deceptive about it. There was sufficient information. Not in this case. It would be a little bit different if the mortgage had an application to it that did not have my signature as a co-buyer or applicant. That was not the case here. That application was hidden. The action taken was hidden. It's apparent that no investigation was done in that regard. In Midland, Justice Sotomayor and Ginsburg and, I believe, Alito, state that the Midland case is very limited in its holding regarding proof of claims, and it is distinguishable because there were facts that the consumer could ascertain as a defense. And that's what this case is all about. When facts are concealed and hidden, it is an unfair tactic because the consumer can take a different course of action and that's what happens here, and I'm out of time. Thank you very much. Thank you. The case is submitted.